UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

THE GLIDDEN COMPANY, ET AL.,   *
            *
   Plaintiffs      *
            *
  v.          *   Civ. No. 97-2577 (PG)
            *
LANCO MANUFACTURING CORP., ET AL, *
            *
   Defendants     *
            *

* * * * * * * * * * * * * * * * * * * * * * * * * *

**OPINION & ORDER**

In this Dickensesque trademarks action, pending before this Court are several motions for summary judgment (Dkts. 20, 36 & 71), several motions for the issuance of a preliminary injunction (Dkts. 21, 26, & 42), motions for sanctions (Dkts. 62 & 63), a motion to dismiss (Dkt. 63), and several motions to compel discovery (65, 69 & 75). In line with Newton's third law, every action has had an equally strong reaction;[1] for every motion filed a response and, of course, a reply to the response has also been filed. (Dkts. 26, 47, 68, 72, 74, 80, 95) Because issues of material fact persist, the Court DENIES both parties' motions for summary judgment. The Court also DENIES Plaintiffs' motion for a preliminary injunction.

**FACTS**

Grow Group Inc. ("Grow") filed trademark application for the trademark "REGENCY" before the United States Patent and Trademark Office ("USPTO") on June 6, 1989 and the mark was registered on the Principal Register of the USPTO on May 1, 1990.[2] The parties intended to transfer all the assets

---

[1]Newton's Third Law states that "If one body exerts a force on a second body, the second exerts an equal and opposite force on the first body."

[2]The trademarks at issue all are for use with house paint.



97-2577 (PG)                                                                    2

utilized in the business of Harris, Wallcovering and Cello over to Lanco in order for Lanco to continue

all the operations of the Grow subsidiaries in Puerto Rico.  On May 23, 1990, Lanco Manufacturing

Corp. ("Lanco") executed an asset purchase agreement ("agreement") in furtherance of this goal,

whereby Lanco acquired certain assets of various Grow subsidiaries (Harris & Devoe Paints Corp.

("Harris"), Wallcovering Gallery, Inc. ("Wallcovering"), and Cello Puerto Rico Corp. ("Cello"))

operating in Puerto Rico in exchange for $8,084,217.00.  The deal comprised the purchase and sale of

all the assets necessary for the continuance of operations of Harris, Wallcovering, and Cello.  Lanco

acquired certain trademarks from the sellers.[3]  While Grow was not listed as a seller in the agreement,

it was listed as a party to the agreement and participated in the negotiations.

Schedule 2.8 of the agreement set forth which trademarks were being acquired by Lanco.

Among them was listed "Harris & Devoe REGENCY House," a trademark allegedly registered in

Puerto Rico on September 20, 1983.  The mark was listed with an "A" next to the mark.  Schedule 2.8

defined an "A" as an "Abandoned Trademark."  Under the heading of "Renewal Date" for the mark

"Harris & Devoe REGENCY House" was listed "NONE."  Indeed, every trademark under section (b),

"Trademarks registered in Puerto Rico," that had "NONE" listed as the "Renewal Date" also were listed

as abandoned.  On June 19, 1990, the parties executed a letter adding to and modifying the agreement.

The June 19 Letter amended Schedule 2.8 of the agreement to include only those trademarks delivered

to Lanco on June 19, 1990.  The "Harris & Devoe REGENCY House" mark was apparently not

included in that list.

Subsequent to Grow's registration of the "REGENCY" mark and the execution of the May 23,

---

[3]The parties dispute which trademarks were actually acquired by Lanco.  For the purposes of this litigation only the "Harris & Devoe REGENCY House" mark is at issue from the agreement.

97-2577 (PG)                                                                                      3

1990 assert purchase agreement, Defendants began selling paint labeled with the mark "Harris

REGENCY House." Defendants eventually dropped the "House" from the mark, and began using the

mark "REGENCY" with "Harris" placed above it in a smaller font. For their part, Plaintiffs advertised

paint labeled with the mark "REGENCY," with "Devoe Paints" in smaller font above at least one time.

On December 31, 1996, Grow merged with The Glidden Company ("Glidden"). As part of the

merger, Grow assigned its federally registered "REGENCY" trademark to Glidden. Glidden filed this

trademark infringement and unfair competition suit against Lanco, Enrique Blanco, Sergio Blanco,

Guillermo Blanco, Florentino Blanco, d/b/a Harris Paint and the Blanco Group ("Defendants") on

October 28, 1997.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate in trademark infringement cases, as elsewhere, 'if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law.' *Boston Ath. Ass'n v. Sullivan*, 867 F.2d 11, 24 (1ˢᵗ Cir. 1989)

(quoting FED. R. CIV. P. 56(c))." *The International Ass'n of Machinists and Aerospace Wrks., et al. v.

Winship Green Nurs. Ctr.*, 103 F.3d 196, 199 (1ˢᵗ Cir. 1996) ("IAM"). Summary Judgment is "a means

of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial

resources in more beneficial ways." *Messnick v. General Elec. Co.*, 950 F.2d 816, 822 (1ˢᵗ Cir. 1991),

*cert. denied*, 504 U.S. 985 (1992). The trial court must go beyond the façade of the pleadings and

"assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ.

Sch. of Med.*, 976 F.2d 791, 794 (1ˢᵗ Cir. 1992), *cert. denied*, 507 U.S. 1030 (1993). Throughout the

court's analysis, "the entire record [must be seen] in the light most hospitable to the party opposing

97-2577 (PG)                                                                          4

summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*,

904 F.2d 112, 115 (1st Cir. 1990). *See also Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1st Cir. 1999),

*reh'g denied by* 171 F.3d 710 (1st Cir. 1999), *cert. denied* __ U.S. __, 120 S. Ct. 44 (1999);

*Maldonado-Denis v. Castillo-Rodríguez*, 23 F. 3d 576, 581 (1st Cir. 1994).

The moving party must first make a preliminary showing that there is no genuine issue of

material fact which requires resolution at trial. *See Cadle Co. v Hayes*, 116 F.3d 957, 960 (1st Cir.

1997). Once the moving party has properly supported it's motion, "the burden shifts to the nonmovant

to demonstrate, through specific facts, that a trialworthy issue remains." *Id. See also Borschow Hosp.

& Med. Supplies, Inc. v. Cesar Castillo, Inc.*, 96 F.3d 10, 14 (1st Cir. 1996). "The mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

252 (1986). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a

verdict for that party. If the evidence is merely colorable or is not significantly probative, summary

judgment may be granted.'" *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990) (quoting *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. at 249-50). Thus, the "summary judgment paradigm requires us to draw

and respect only *reasonable* inferences; we need not infer that which is farfetched or fantastic." *IAM*,

103 F.3d at 206.

## PAINT WARS–PRELIMINARY INJUNCTION (EGG SHELL WHITE)

"Trademark infringement and unfair competition laws exist largely to protect the public from

confusion anent the actual source of the goods or services." *IAM*, 103 F.3d at 200. "Confusion about

source exists when a buyer is likely to purchase one product in the belief she was buying another and

is thus potentially prevented from obtaining what she actually wants." *Star Fin. Servs., Inc. v. Aastar*

97-2577 (PG)                                                                                                          5

*Mortg.*, 89 F.3d 5, 9 (1ˢᵗ Cir. 1996). Generally, a preliminary injunction will be granted when confusion of source exists.

Plaintiff has requested that this Court grant it a preliminary injunction. A preliminary injunction has long been considered an extraordinary and far-reaching remedy. The granting or denial of a preliminary injunction does not amount to an adjudication on the merits and at trial a court is not bound by determinations made in the hearing on a preliminary injunction.

The First Circuit has developed its own criteria governing when a court should grant a preliminary injunction in trademark and unfair competition cases: (1) the likelihood of success on the merits; (2) the potentiality for irreparable injury; (3) a balance of the relevant equities and hardship to the parties; and (4) the effect on public interest. *See Hypertherm, Inc. v. Precision Prods., Inc.*, 832 F.2d 697, 699 n.2 (1ˢᵗ Cir. 1987); *American Bd. of Psychiatry and Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1, 3 (1ˢᵗ Cir. 1997).

In ruling on a preliminary injunction motion, the Court must ask whether the moving party meets the four criteria listed above. "Though the district court enjoys considerable discretion in applying this test, its decision to grant or deny a preliminary injunction must be supported by adequate findings of fact and conclusions of law." *TEC Eng'g Corp v. Budget Molders Supply, Inc.*, 82 F.3d 542, 544-45 (1ˢᵗ Cir. 1996) (citing FED. R. CIV. P. 52(a); *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1228 (1ˢᵗ Cir. 1994), *cert. denied*, 517 U.S. 1245 (1996)). The Court's findings "need not be overly detailed." *Id.* at 545.

## 1.    Likelihood of Success on the Merits

The likelihood of success on the merits is the critical issue for the Court to consider in deciding to issue a preliminary injunction. If a plaintiff is likely to succeed on the merits the remaining factors

97-2577 (PG)                                                                                                  6

will generally fall in place. *See Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 220 (1st Cir.

1995) ("In a trademark case the key issue is the likelihood of success on the merits because the other

decisions will flow from that ruling."). In order to prevail in a trademark infringement action, a plaintiff

must prove that (1) it owns the mark, (2) that a defendant is using the same or a similar mark, and (3)

that the defendant's use of the mark is likely to confuse the public, thereby harming the plaintiff. *See*

*Star Fin. Servs.*, 89 F.3d at 9 (quoting *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 605 (1st Cir. 1992),

*cert. denied*, 509 U.S. 923 (1993)).  This case turns on the first proof factor; Defendants have

challenged ownership of the mark.

### a. Ownership of "REGENCY" Mark

The parties have disputed who owns the mark "REGENCY."[4]  This much is clear: Plaintiff

registered the "REGENCY" mark in 1990 on the principal register.  "When proving ownership of a

trademark, federal registration of the mark is prima facie evidence that the registrant is the owner of the

mark." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996), *cert. denied*, 521

U.S. 1103 (1997) (citing 15 U.S.C §§ 1057(b) & 1115(a)).  *See also Geoffrey, Inc. v. Toys 'R Us*

*(Nosotros Somos Los Jugetes)*, 756 F. Supp. 661 (D.P.R. 1991).  The registrant is therefore permitted

a presumption of ownership which the challenger must overcome by a preponderance of the evidence.

*See id.* at 1219-20.  The challenger can rebut the presumption by showing that it used the mark in

commerce first, and by doing so, invalidates the registration. *See id.* at 1220.

Defendants concede that Plaintiffs registered the "REGENCY" mark on the principal register

on May 1, 1990.  Plaintiffs are therefore entitled to a presumption that they own the mark.  Defendants,

---

[4]It is generally preferable to treat the parent corporation as the "owner" of all marks used by a subsidiary
corporation. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988).

for their part, have introduced a creative theory; that Defendants purchased the rights to the mark

"Harris & Devoe REGENCY House" in the agreement and later validly altered the mark to

"REGENCY."

　　　　To continue its right in the mark, Defendants must alter a mark in a way that retains the marks'

connective impact and continues the commercial impression of the mark. The test is one of continuity,

the key element must survive. The change in the format of the mark does not constitute abandonment

of that mark nor does it account for a break in the continuos use of the mark if the change neither creates

a brand new mark nor changes the commercial impression created by the old mark. *See, e.g., Owens-*

*Illinos, Inc. v. Optimist Int'l*, 173 U.S.P.Q. 120 (T.T.A.B. 1972); *Viviane Woodard Corp. v. Roberts*,

181 U.S.P.Q. 840 (T.T.A.B. 1974); *General Mills, Inc. v. Frito-Lay, Inc.*, 176 U.S.P.Q. 148 (T.T.A.B.

1972); *Super Value Stores, Inc. v. Exxon Corp.*, 11 U.S.P.Q.2d 1539 (T.T.A.B. 1989); *Ilco Corp. v.*

*Ideal Sec. Hardware Corp.*, 527 F.2d 1221 (C.C.P.A. 1976); *American Paging, Inc. v. American*

*Mobilephone, Inc.*, 13 U.S.P.Q.2d 2036 (T.T.A.B. 1989), *aff'd*, 17 U.S.P.Q.2d 1726 (Fed. Cir. 1990);

*Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156 (Fed. Cir. 1991). The Federal Circuit has

stated that the continuing commercial impression test requires focusing on the marks in their entirety

to determine if they convey the same commercial impression. *See Van Dyne-Crotty*, 926 F.2d at 1160.

"Thus, where the distinctive character of the mark is not changed, the mark is in effect, the same and

the rights obtained by virtue of the earlier use of the prior form inure to the latter form." *Humble Oil*

*& Refining Co. v. Sekisui Chem. Co.*, 165 U.S.P.Q. 597, 603 (T.T.A.B. 1970).

　　　　The Court must therefore determine if the "Harris & Devoe REGENCY House" mark continued

the same commercial impression when Lanco altered the mark to first, "Harris REGENCY," and then,

later, "REGENCY." The question the Court asks is would "purchasers . . . distinguish the two marks

97-2577 (PG)                                                                              8

and [] not consider them to be the same." *American Paging, Inc. v. American Mobilephone, Inc.*, 13

U.S.P.Q.2d at 2038.  Upon inspection of the two marks, the Court is of the opinion that the marks do

indeed convey the same commercial impression.  Both the original "Harris & Devoe REGENCY

House" mark and the newer "Harris Paints REGENCY" mark share similar font (the newer font has

been thinned).  Indeed, the letters "e", "g", "n", "c", and "y" in "REGENCY" are virtually identical in

both marks (with only the width being different).  The only discernible difference between the two

"REGENCY" marks is the letter "r", which has been changed slightly.  However, when looking at the

two marks, "REGENCY" is the most recognizable feature in both.  When a consumer sees the marks,

his or her immediate reaction would be the same, this is "REGENCY" paint.  Therefore, Lanco's

change of the "Harris & Devoe REGENCY House" to "Harris Paints REGENCY" did not constitute

abandonment and Lanco may be permitted to "tack-on" to the prior format for priority purposes.  *See,*

*e.g., Proxite Prods., Inc. v. Bonnie Brite Prods. Corp.*, 206 F. Supp. 511 (S.D.N.Y. 1962) (PROX

BONNIE BLUE to BONNIE BLUE permitted); *Hess's of Allentown, Inc. v. National Bellas Hess, Inc.*,

169 U.S.P.Q. 673 (T.T.A.B. 1971) (HESS BROS. to HESS); *Sands, Taylor & Wood Co. v. Quaker Oats*

*Co.*, 978 F.2d 947 (7th Cir. 1992), *cert. denied, Quaker Oats Co. v. Sands, Taylor & Wood Co.*, 507 U.S.

1042 (1993) (THIRST-AID–FIRST AID FOR YOUR THIRST to THIRST AID permitted because

dropped only non-essential part and continued "key element").  *Cf. Pro-Cuts v. Schilz-Price Enters.,*

*Inc.* 27 U.S.P.Q.2d 1224, 1226-27 (T.T.A.B. 1993) (PRO-KUT to PRO-CUTS not permitted because

"Aside from the differences between the marks in spelling and pluralization, there is a very material

difference between them because of their different design features . . . . [T]hey cleary are not legal

equivalents.").

        Before denying the preliminary injunction and denying Plaintiffs' motion for summary

97-2577 (PG)                                                                                            9

judgment, one more question needs to be addressed. In order for the continuing impression theory to

take hold of this case, Defendants need to have legally obtained the mark "Harris & Devoe REGENCY

House" pursuant to the agreement. The parties claims of ownership are hampered by two issues: Did

the Defendants obtain the "Harris & Devoe REGENCY House" mark pursuant to the agreement and

was the "Harris & Devoe REGENCY House" mark abandoned at the time Defendants tried to acquire

it?[5] Rights lost as a result of abandonment are not revived upon subsequent use.

> Section 45 of the Lanham Act describes that a mark will be deemed "abandoned"
>
> (1) When its use has been discontinued with intent not to resume such use. Intent not
> to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall
> be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of
> such mark made in the ordinary course of trade, and not made merely to reserve a right
> in a mark.

15 U.S.C. § 1127. The two criteria a court must look at in an abandonment case are (1) the nonuse of

a mark, and (2) the intent not to resume use. *See Sands, Taylor & Wood Co.*, 978 F.2d at 955; *Citibank,*

*N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1545, *reh'g denied at* 731 F.2d 891 (11th Cir. 1984). The

burden of proof is on the party claiming abandonment. However, the non-use of a mark for 3

consecutive years is prima facie evidence of abandonment. To overcome this presumption, "the owner

of the mark has the burden to demonstrate that circumstances do not justify the inference of intent not

to resume use." *Exxon Corp. v. Humble Exploration Co., Inc.*, 695 F.2d 96, 99, *reh'g denied at* 701

F.2d 173 (5th Cir. 1983).

If abandonment is at issue, the case would not be suitable for summary judgment because

abandonment is an issue of fact. *See Rivard v. Linville*, 133 F.3d 1446 (Fed. Cir. 1998). Whether

---

[5]To this point the Court has used the term abandoned in relation to Lanco's alteration of a mark. Abandonment
has a very specific meaning in trademark law. " Once held abandoned, a mark falls into the public domain and is free for
all to use." 2 McCarthy on Trademarks at § 17.1, p. 17-2.

97-2577 (PG)                                                                                          10

Lanco (or the previous owners) abandoned the mark is an issue of fact which remains in dispute.

Without sufficient facts to find for Plaintiffs, the Court cannot grant Plaintiffs' motion for a preliminary

injunction.  Plaintiffs should have introduced evidence of nonuse by Lanco (or the previous owners)

instead of solely focusing on the intent of Lanco (or the previous owners).[6]

However, Plaintiffs have introduced evidence which may prove that the "Harris & Devoe

REGENCY House" mark was never part of the agreement.  If that is the case, Defendants never owned

the "Harris & Devoe REGENCY House" mark and therefore could not alter it.  At the very least,

Plaintiffs are likely to prevail on this issue.

### b. Use of Same or Similar Mark and Likelihood of Confusion

The marks in question are very similar.  Both emphasize the word "REGENCY" on cans of

paint.  The similarities may lead to consumer confusion.  Eight factors are typically considered in

determining likelihood of confusion between two marks.  They are (1) the similarity of the marks, (2)

the similarity of the goods, (3) the relationship between the parties' channels of trade, (4) the

juxtaposition of their advertising, (5) the classes of prospective purchasers; (6) the evidence of actual

confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of

the plaintiff's mark.  *See IAM*, 103 F.3d at 201.  These factors are merely guides, no one factor is

determinative.  The ultimate question is will a consumer confuse the identity of the maker of the two

marks.

Many of the above factors weigh in favor of a finding of likelihood of confusion.  There is

---

[6]Plaintiffs had alleged that because the mark "Harris & Devoe REGENCY House" had an "A" listed next to it, that
the mark was abandoned.  More is needed to prove abandonment.  Plaintiffs could have introduced evidence that the mark
had not been in use for a certain amount of time, evidence the Court may use to determine both non-use and intent.

97-2577 (PG)                                                                                                11

similarity of marks, channels of trade, advertising, and prospective purchasers.  However, no evidence

has been presented of actual confusion or of Lanco's intent in adopting their mark or of the strength of

Plaintiffs' mark or of Defendants' intent in adopting the mark.  Without more evidence, the Court

cannot grant the preliminary injunction.[7]

**2.    Potential for Irreparable Injury & Balance of Equities and Hardships**

Plaintiffs have failed to offer any evidence that they would be irreparably injured.  Instead

Plaintiffs baldly assert that when trademark infringers appropriate federally registered marks, the

owners suffer irreparable injuries because they are unable to control the quality of the products

associated with the marks, and thus the reputation and good will of the owners are put at risk.  For this

revelation, Plaintiffs cite *Geoffrey, Inc. v. Toys 'R Us*, 756 F. Supp. at 668.  In *Geoffrey, Inc.*, this Court

held that the mark in question had a "well-established reputation": "Because plaintiff's marks are well

known and well advertised, the plaintiff has created a significant goodwill in these marks.

Consequently, it has a great interest in ensuring that the services and goods associated with [the] mark

maintain its well-established reputation." 756 F. Supp. at 668.  Of course, this is by no means the

situation here.[8]  As discussed previously, Plaintiffs do not seem to have a well-established reputation

in their mark, at least they have not so evidenced.  The potential for irreparable injury is slight.

The balance of equities weighs against granting the preliminary injunction.  While monetary loss

---

[7]The Court also emphasizes that Plaintiffs have not countered Defendants assertion that Plaintiffs have sold a mere 9 gallons of paint bearing the "REGENCY" trademark in Puerto Rico. The Court is unsure if this is the only paint anywhere that Plaintiffs have sold with this mark.  It would be highly doubtful that consumers will confuse two marks if one of the products with one of the marks *is never seen in commerce*.  Also, Plaintiffs delayed six-months before filing their motion for a preliminary injunction. *See Laches Discussion.*

[8]In *Geoffrey, Inc.*, the Court pointed to testimony that plaintiff had already been forced to register to do business in Puerto Rico under a different name, incurring expenses as a result.  The Court also notes that Plaintiffs waited a significant amount of time *after* the filing of the complaint before filing their motion for preliminary injunction, a fact discussed more fully later in this opinion.

is a very minor consideration to a court, the loss of goodwill and reputation are major considerations. Here, Plaintiffs are not likely to lose anything besides money, something easily reimbursable. Moreover, neither party has alleged that the products in question are inferior. While a consumer may confuse the two products, the only harm would seem to be financial. Plaintiffs have failed to convince this Court that they will be harmed anywhere but their pocketbook.

## 3.    Effect on Public Interests

The effect on the public interest is negligible on this case. Until Plaintiffs produce evidence that they are selling paint in Puerto Rico, or that consumers are confusing the two marks as to source, the Court sees no reason to issue such an extraordinary measure as a preliminary injunction.

While a senior federal registrant has superior rights that extend into Puerto Rico, an injunction may not be issued until there is proof of a likelihood of entry in Puerto Rico that will cause confusion there. A one time advertising may not be enough to establish a likelihood of confusion in Puerto Rico. A federal registrant should demonstrate through substantial evidence that it advertised "extensive[ly] . . . in various media available in Puerto Rico." *Century 21 Real Estate Corp. v. Century 21 Real Estate, Inc.*, 929 F.2d 827, 830 (1st Cir. 1991). Plaintiffs have not demonstrated that they have advertised more than one time. They have also failed to demonstrate that they have sold *any* meaningful amount of paint in Puerto Rico bearing the "REGENCY" mark.

## 4.    Laches

Defendants assert that laches prevents Plaintiffs from any enforcement of their mark. An analysis under laches "assumes the existence of an infringement for an extended period prior to the commencement of litigation." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996), *cert. denied*, 519 U.S. 976 (1996); *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 569 (6th Cir. 2000). A

97-2577 (PG)                                                                                        13

finding of laches is within the discretion of this Court. Some factors the Court may considered are: (1)

whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging

the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was

unduly prejudiced by the owner's delay. *Kellogg Co. v. Exxon Corp.*, 209 F.3d at 569 (quoting

*Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir. 1990)). "[D]elay is to be measured from the time

at which the plaintiffs knows or should know she has a provable claim for infringement." *Kason Indus.,*

*Inc. v. Component Hardware Group*, 120 F.3d 1199, 1206 (11th Cir. 1997); *Kellogg Co. v. Exxon Corp.,*

209 F.3d at 570. A court should be hesitant to find laches in a trademark case for "[p]otential plaintiffs

in a trademark infringement cases steer a hazardous course between the Scylla of laches . . . and the

Charybdis of premature litigation." *Kellogg Co. v. Exxon Corp.*, 209 F.3d at 570. This puts a plaintiff

in the "horns of a dilemma:"

> "If [Plaintiffs] wait[] for substantial injury and evidence of actual confusion, it may be
> faced with a laches defense. If it rushes immediately into litigation, it may have little
> or no evidence of actual confusion and real commercial damage, may appear at a
> psychological disadvantage as 'shooting from the hip' and may even face a
> counterclaim for overly aggressive use of litigation."

*Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d at 462 (quoting 4 McCarthy § 31.06[2][c]).

"No doubt less is necessary to defeat a preliminary injunction; delay alone may be enough, at

least if the original use was innocent." *My-T-Fine v. Samuels*, 69 F.2d 76 (2d Cir. 1934). Obviously,

the longer the delay, the less likely immediate extraordinary relief is necessary. Plaintiffs waited nearly

six years to file their complaint and six months after that to file for a preliminary injunction. Such delay

seriously undercuts Plaintiffs contention that a preliminary injunction should issue.

Plaintiffs have thus failed to meet their burden and the Court therefore DENIES Plaintiffs'

motion for preliminary injunction based upon the above reasoning. The also DENIES Defendants'

motion for preliminary judgment for the same reasoning set forth above.

## PAINT WARS II–SUMMARY JUDGMENT (FOREST GREEN)

Summary judgment is inappropriate in cases where genuine issues of material fact persist. In the present case, the issues surrounding the abandonment and ownership of the "Harris & Devoe REGENCY House" mark are factual issues. The Court previously held that whether the mark was abandoned was in dispute. The Court did find that Defendants never were transferred ownership of the "Harris & Devoe REGENCY House" mark under the terms of the agreement and the June 19 modifying Letter. Other factual questions persist as well, such as how much paint has Glidden sold with the "REGENCY" mark, how well-known is either mark, and has Glidden advertised their mark after June 12, 1998 (or more than one time). Therefore, because factual issues mingled with legal questions persist, the Court DENIES both parties' motions for summary judgment.

## A MEDLEY OF COLORS

### 1.    Parol Evidence

Plaintiffs contend that the parol evidence rule precludes Defendants from introducing any evidence outside of the agreement. The parol evidence rule, as defined by Black's Law Dictionary, is the principle that a writing intended by the parties to be a final embodiment of their agreement cannot be modified by evidence that adds to, varies, or contradicts the writing." BLACK'S LAW DICTIONARY 1139-40 (7th ed. 1999). "Notwithstanding the parol evidence rule, extrinsic evidence can be admitted to discover the parties' genuine intent when a contract is ambiguous." *See Brooklyn Bagel Boys, Inc. v. Earthgrains Dough Prods., Inc.*, No. 99-3055, 2000 U.S. App. LEXIS 9052, at *18 (May 8, 2000). Under Puerto Rico law, "if the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear

97-2577 (PG)                                                                                        15

contrary to the evident intentions of the contracting parties, the intention shall prevail." P.R. Laws Ann.

tit 31, § 3471 (1991). When the agreement is clear and unambiguous, the Court must ignore parol

evidence and look solely to the literal terms of the agreement. *See Vulcan Tools of P.R. v. Makita,*

*U.S.A., Inc.*, 23 F.3d 564, 567 (1ˢᵗ Cir. 1994); *Borchow Hosp. & Med. v. Cesar Castillo*, 96 F.3d at 15.

An agreement is clear "when it can 'be understood in one sense alone, without leaving any room for

doubt, controversies or difference of interpretation . . . ." *Borchow Hosp.*, 96 F.3d at 15 (quote

originally from *Heirs of Ramirez v. Superior Court*, 81 P.R.R. 347, 351 (1959)).

> In section 9.8 on page 50 of the agreement, the parties make clear that the agreement
>
> contains the entire understanding of the parties with respect to the transactions
> contemplated hereby and supersedes all prior written or oral commitments,
> arrangements or understandings with respect thereto except that the Confidentiality
> Agreement dated February 19, 1990 between Harris and Purchaser shall remain in full
> force and effect. There are no restrictions, agreements, promises, warranties,
> representations, covenants or undertakings other than those expressly set forth herein
> and in the Schedules and Exhibits hereto. The Schedules and Exhibits hereto are made
> an integral part of this agreement.

Agreement § 9.8, p. 50. The agreement was to be "governed and construed in accordance with the laws

of the Commonwealth" of Puerto Rico. Agreement § 9.10, p. 51. The Court therefore holds that the

contract is clear and unambiguous, especially in concert with the June 19 Letter.[9]

---

[9]Through a letter dated June 19, 1990, the parties referenced the agreement in order to "serve to confirm certain additional understandings with respect to the Agreement." Of chief concern in this case is the second paragraph: "1. Schedule 2.8 of the Agreement, as it pertains to trademarks, is amended to reflect only those trademarks on the assignments of United States and Puerto Rico trademarks executed and delivered to you on this date." The parol evidence rule, as well as the agreement itself, permits this letter to be incorporated into the agreement. However, neither party has produced potentially vital evidence, namely what trademarks were turned over by the parties on June 19, 1990. A court in a similar case stated this situation this way: "The language could not be broader or more plain, and yet a subsequent provision of the contract excludes from sale [certain assets] . . . . The broad language of the sale provision and the undefined term 'assets' raises a question as to whether the contract was intended to preserve some right in the mark . . . . If an ambiguity exists in the contract, then parol evidence would have to be considered to determine the intention of the parties. Such a situation exists here and precludes summary judgment for the defendant. The issue of fact is whether the exclusion provision of the contract was intended to include trademark rights." *Towle/Sigma Giftware Corp. v. J. Edward Connelly Assocs., Inc.*, 547 F. Supp. 877, 878 (W.D. Pa. 1982). In this case, the reference letter clarifies matters.

## 2.    Breach of Contract and of Obligation to act in Good Faith

Defendants have alleged that Plaintiffs breached their legal duty to act in good faith while negotiating the agreement. This allegation deserves little discussion. Plaintiffs registered a trademark, "REGENCY," around the time they were negotiating with Defendants over the purchase of Grow's entire Puerto Rico subsidiaries' business and assets. The "REGENCY" mark was registered by the parent, Grow, and not by the subsidiaries. Grow owned the mark and was not a seller in the agreement. The only trademarks sold belonged to the subsidiaries. More could be said, but to what end. Defendants allegation is meritless.

If any question may persist, it surrounds Plaintiffs' failure to advise the Patent and Trademark Office of the existence of the "Harris & Devoe REGENCY House" mark. There are several reasons why their failure may not be bad faith, including the belief that the marks were dissimilar or their belief that the "Harris & Devoe REGENCY House" mark was abandoned. Plaintiffs have not moved for summary judgment on this issue. Therefore, at this stage these questions are enough to preclude a determination for Defendants.

## 3.    Sanctions

Both parties have moved for the imposition of sanctions for violations of FED. R. CIV. P. 37. (Dkts. 62 & 63) For their part, Plaintiffs are upset that Mr. Guillermo Blanco failed to show at the scheduled time for his deposition. Defendants replied that Mr. Blanco's absence was based on a good faith mistake. Blanco, after several tries to schedule the deposition by Plaintiffs, showed up for his deposition on the correct date, but the wrong time. Blanco showed at 9:30 a.m., his deposition was clearly scheduled for 1:30 p.m. After explaining this to him, Blanco failed to return for the 1:30 p.m. time. It was Defendants responsibility to ensure Blanco was there and thus it is Defendants

responsibility to pay for the costs associated with the January 18, 1999 Blanco deposition date. If not already undertaken, Mr. Guillermo Blanco is also ordered to show up and be deposed at the discretion of Plaintiffs, weak excuses notwithstanding.

On the other side, Defendants, in a submission of voluminous length, list various missteps undertaken by Plaintiffs.[10] Plaintiffs failed to inform Defendants that Mr. Francisco Báez was not an employee or managing agent of Glidden. Instead, Defendants were required to serve a subpoena on Mr. Báez. It seems Mr. Báez is at the very least a managing agent of Glidden and as such, Plaintiffs were required to produce him at his deposition. Even if Mr. Báez may be found not to be an employee or managing agent, Plaintiffs failure to notify Defendants of this fact after they had received numerous notices would weigh heavily in finding Plaintiffs' duty to inform Defendants of this fact. Regardless of the theory, Plaintiffs shall pay for the costs incurred by Mr. Báez absence at his deposition. If not already undertaken, Mr. Báez is hereby ordered to show up at his deposition, to be set up at the discretion of Defendants.[11] Both sides allege discovery violations, which are discussed below.

**4.      Motion to Dismiss**

Defendants have invited the Court to dismiss the case due to Plaintiffs alleged misconduct. (Dkt. 63) The Court declines Defendants invitation.

**5.      Motions to Compel Discovery**

Both parties have moved the Court to compel discovery in this case. Both parties are entitled to broad discovery. FED. R. CIV. P. 26(b)(1) grants parties great latitude to seek information through

---

[10]The missteps include unanswered and unsatisfactorily answered requests and interrogatories and the failure of Plaintiffs "witness" to appear at his deposition.

[11]The Court is confident neither side will abuse this discretion in setting up the deposition times. Failure to cooperate will be dealt with harshly.

97-2577 (PG)                                                                                                              18

discovery. So long as the information sought is "relevant" and not "privileged," a party should comply

with the request. What is relevant is to be broadly construed; the information must simply bear some

relevancy to the subject matter at issue. The parties contentions are divided and discussed below.

### a. Plaintiffs' Motion to Compel (Dkt. 65)

Plaintiffs wish to compel discovery from Defendants in two areas. Plaintiffs contend that

Defendants failed to respond to Glidden's Request for Production of Documents served on May 1,

1998. Plaintiffs are also unsatisfied with Defendants' answers to their First Set of Interrogatories served

on December 22, 1998.

Defendants responded to the May 1, 1998 Request for Production of Documents on June 3,

1998. Plaintiffs contend that the response was evasive and failed to adequately address Plaintiffs'

requests. Defendants have apparently failed to supplement their answers, as was agreed upon during

the October 8, 1998 Local Rule 311.11 meeting. Without discussing every contention listed by both

sides, the Court will discuss only those that will require action on the part of the parties. Any request

of area of contention not discussed should be deemed denied.

First, Defendants are hereby ordered to supplement their answers, if not already done so before

the date of this Opinion and Order. Second, Defendants shall turn over any documentation (complete

copies) pertaining to Plaintiffs' Request for Documents Numbers 1 & 2 (documents relating in any way

to acquisition by Lanco of the "REGENCY" or "Harris & Devoe REGENCY House" marks, including

documentation of assignment or transferral, etc.). If no documentation exists, Defendants shall so

certify. Third, Defendants shall either turn over any labels as well as any sales, promotional or

advertising materials with the "REGENCY" or "Harris & Devoe REGENCY House" marks used since

1989 (each label or material should be dated), or certify that none exist for that time period (Request

Numbers 3 & 4). If Defendants do not have any labels from 1989 to 1995, they shall so certify. Fourth, Defendants shall certify that the sales report showing sales from 1982 to 1997 is only for paint labeled with the "REGENCY" or "Harris & Devoe REGENCY House" marks. Fifth, Defendants should clarify for Plaintiffs and this Court what labels were used in what year and also turn over samples of invoices and accounting records from various years which reflect sales of paint labeled with the "REGENCY" or "Harris & Devoe REGENCY House" marks. An exhaustive list is not necessary. Sixth, Defendants shall turn over any documents which reflect the decision to alter the "Harris & Devoe REGENCY House" and "REGENCY" marks.

### b. Defendants' Motion to Compel (Dkt. 69)

Defendants also move the Court to compel discovery of various requests to Plaintiffs. (Dkt. 69) Defendants' dismay focuses on two areas: interrogatories and requests for documents.

Again, without discussing every contention listed by both sides, the Court will discuss only those that will require action on the part of the parties. Any request of area of contention not discussed should be deemed denied.

First, Plaintiffs are hereby ordered to provide Defendants with the name, address and position or occupation of any person with decision-making authority in adopting the "REGENCY" mark (including providing the address and title for Mr. Ron Raley). Second, Plaintiffs shall inform Defendants if any person associated with Plaintiffs conducted an investigation regarding potential infringement of the "REGENCY" mark. If so, names and address should be provided Defendants. Third, Plaintiffs shall answer Interrogatory No. 13 more fully. Neither Plaintiffs' response nor supplemental response sufficiently answer the pertinent questions set forth in that Interrogatory. Fourth, Plaintiffs shall provide Defendants with copies of the applicable sections of the merger agreement

between Grow and Glidden which discuss assignment of the "REGENCY" mark, subject to a confidentiality agreement between the parties. Fifth, Plaintiffs shall turn over evidence demonstrating their continuous use of the "REGENCY" mark. Such evidence may include dated labels and advertisements, catalogs and lists where "REGENCY" mark is included, and documents showing the amount of paint sold with the "REGENCY" mark (with accompanying dates and geographical areas). Sixth, Plaintiffs shall (1) provide Defendants with evidence showing how much Plaintiffs have spent on advertising in Puerto Rico, and (2) certify who, if any, is the advertising agency charged with promoting and marketing paint with the "REGENCY" mark. Seventh, Plaintiffs shall turn over samples of sales or advertising materials concerning paint bearing the label "REGENCY," used during the period of 1989 to present. Plaintiffs need not turn over every piece of advertising material ever used, but should turn over a sufficient number of pieces to develop their contention that the mark was used and advertised continuously. Eighth, Plaintiffs shall certify if other versions of the "REGENCY" trademark have been employed (e.g., "REGENCY House" or "Devoe REGENCY House).

97-2577 (PG)                                                                          21

## CONCLUSION

Based upon the above reasoning, the Court

(1)    DENIES Plaintiffs' motion for summary judgment;

(2)    DENIES Plaintiffs' motion for preliminary injunction;

(3)    DENIES Defendants' motion for summary judgment;

(4)    DENIES Defendants' motion for preliminary injunction;

(5)    finds that the agreement stands by itself and the parol evidence rule precludes the consideration of outside materials;

(6)    declines to find any breach of contract or obligation of good faith;

(7)    sanctions each party the costs of the missed depositions;

(8)    DENIES Defendants' motion to dismiss; and

(9)    GRANTS the specific requests set forth above pursuant to the parties' motions to compel.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June ___7___, 2000.

                                                    JUAN M. PEREZ-GIMENEZ
                                                    U.S. District Judge